IN RE GUARDIANSHIP OF WILLIAM MCKINLEY MEINDERS.

No. 43419.

JULY 31, 1936.

REHEARING DENIED SEPTEMBER 25, 1936.

F. J. McGreevy, for B. M. Meinders, Guardian, appellant.

Myles J. Kildee and Kildee & Kildee, for William McKinley Meinders and Grace Meinders, appellees.

MITCHELL, J.—Early in April of 1928 William McKinley Meinders filed an application, asking that the court appoint a guardian for his property, and in due time an order was entered, appointing B. M. Meinders as guardian. A bond in the penal sum of $5,000 was filed and letters of guardianship were issued.

Thereafter a report was filed showing the general assets of the estate, consisting of $3,137.40. On December 2, 1930, the guardian filed a report, in which he set out that at the request of the ward he purchased certain real estate, describing the same, which consisted of about ten acres of land, with a small dwelling house and other buildings located thereon, which real estate was located a few miles from the city of Waterloo, Iowa, for an agreed price of $2,250.00, and that later, by reason of some minor clouds upon the title of said property, a reduction of $100 in said purchase price was agreed upon; that he expended on the purchase of this real estate the sum of $2,150.00. He then accounted for the other moneys which came into his hands.

On the 10th day of May, 1934, William McKinley Meinders filed objections to the report, in which he specifically objected to the purchase of the real estate and denied that he ever requested the guardian to purchase same. To this there was filed a reply by the guardian, in which he set up that his ward had occupied the said premises for a matter of some six or seven years; had paid no rent; and that he was now estopped from objecting thereto; and asked that an order be made, approving said investment, the final report of the guardian, and that he be discharged and his bondsman exonerated.

Thereafter there was filed an amendment to the application for the removal of the guardian, by Grace Meinders, the mother of the ward. Finally, after filing all of these reports and amendments thereto, and objections, the case came on for hearing, and evidence was offered. The lower court refused to approve the in-

vestment in the real estate and held that the guardian should account for the money which he paid out of the guardianship funds for said real estate, subject to any other claims he might have against said fund; and directed him forthwith to make a complete report. Exceptions were duly noted. The guardian has appealed to this court.

The legislature of the State of Iowa saw fit to pass Code section 12617, which is as follows:

"Any person, other than an idiot or lunatic, may, upon his own application, by verified petition, have a guardian appointed for his person or property, or both, if, in the opinion of the district court or judge to whom the petition is presented, said appointment would inure to the best interest of said applicant."

Section 12618 is as follows:

"Notice not required. Upon application under section 12617 no notice of the hearing shall be required."

It was under this code section that William McKinley Meinders, a man twenty-six years of age, having a wife and two children, applied to the district court of Butler county, to have his property placed in guardianship. That he was competent, it seems to us, must be conceded, because the statute just cited, under which he applied for the appointment of a guardian and under which a guardian was appointed, provides that "any person, other than an idiot or lunatic, may, upon his own application * * * have a guardian appointed." This is a case in which the ward was competent, for, if he had not been competent, he could not have asked for the appointment of a' guardian and under the law it would have been necessary to have a notice served upon him.

In the case of Dean v. Atwood, 221 Iowa 1388, at page 1390, 212 N. W. 371, 372, this court said:

"Although the order of appointment, under the provisions of section 3219, Code 1897 (under which the order was entered), may be viewed as improvident and inadvertently entered, it must be considered at this time as a verity. It may be noted that chapter 5, of which section 3219, Code 1897, was a part, has since been amended. See section 12617, Code 1924. Under the then statutory provisions, the court did not have the authority

to appoint a person, who, in legal effect, is a trustee or an agent, with the power of attorney to act for a person of normal mind, in the absence of any showing that the petition came within the purview of the definition of a person for whom a guardian could be appointed. The legal and logical effect of the appointment in the instant case made the guardian a trustee or agent of the ward to act for her with respect to her property and her property rights.''

And so in the case at bar the guardian was in reality a trustee or agent of the ward, to act with him in respect to his property and his property rights.

The evidence in this case shows that the guardian was a man of some sixty-eight years of age, an uncle of the ward, uneducated, and having had no previous experience in legal matters.

There is really no material dispute in this record. The purchase of the real estate which is now complained of was made some years ago. The ward and his mother investigated the property before it was purchased. The amount agreed upon, $2,250.00, was a reasonable price for the property at that time. William McKinley Meinders moved his family into the house on the property and they have lived there ever since, a period of approximately seven years. During that period of time he and his wife had trouble and she secured a divorce from him. It is interesting to note that he was competent enough to appear in court and defend the divorce; that his guardian was not notified, nor was a guardian ad litem appointed for him. After the divorce was granted, Grace Meinders, the mother of the ward, who is now objecting to the report as his next or best friend, moved to this place and lived there with her son. During those seven years they have not paid one cent of rent but have had the use and occupancy of the premises during that time. The purchase of the premises was made with the full knowledge of the ward and his mother. The money was paid out of the funds of the estate. The deed which was delivered was in blank and not until after the trouble on this report arose was the name of William McKinley Meinders inserted as grantee. The deed was then filed.

In Perry on Trusts, 5th Edition, Vol. 1, section 467, we find the following:

''If trustees make an improper investment with the knowledge, assent, and acquiescence, or at the request of the cestui

que trust, they cannot be held to make good the loss, if one happens."

And in Vol. 2, section 849, we find:

"If the cestui que trust concur in the breach of the trust, he is estopped from proceeding against the trustee."

And in section 850:

"So a cestui que trust may be debarred from relief by long acquiescence in a breach of the trust, though he did not originally concur in it."

The Michigan court in the case of Lawrence v. First National Bank & Trust Company, 266 Mich. 199, 253 N. W. 267, at page 270 said:

"Where beneficiaries either expressly or impliedly assent to the action of their trustee in managing their property not in strict accord with the terms of the trust, they will be held to have acquiesced in such action. * * * A party cannot complain when he has consented. Quimby v. Uhl, 130 Mich. 198, 212, 89 N. W. 722, 728."

And so in the case at bar in reality the guardian is nothing more than a trustee. The property was purchased with the knowledge of the ward. The ward has occupied the premises for a period of seven years, during which time he paid no rent. He cannot now say that he did not know that these premises belonged to the guardianship, for, after occupying the premises for a period of seven years, and not having paid rent during any of that time, one is not in a very good position to say, "I did not know this was my property."

William McKinley Meinders, as far as this record goes, was a man of sound mind. He secured his uncle, a man advanced in years to act as his guardian. It was upon his application that the guardian was appointed. The money of the estate was used in the purchase of the property. The ward has occupied the premises during these years, and by so doing consented to the investment of the money in the real estate.

The purchase in this case was made in 1928, before the present statute, requiring acts to be approved in advance, was passed.

This court, in In re Guardianship of Lemley, 219 Iowa 765, 259 N. W. 481, 484, said at page 770:

"Until the enactment of chapter 259 of the Forty-third General Assembly, [Code 1931, sec. 12772 et seq.] it has been the general rule adopted and followed in this state that the court might approve an act which it might have authorized or directed to be done, and this with the same effect as though the order preceded the act. The appellants here contend that the investment as made and reported by the guardian was unauthorized and illegal because a prior order of court approving the same was not secured. We have many times held that investments so made but subsequently approved by the court would validate the investment. Until the enactment of chapter 259 of the Forty-third General Assembly, there was no prohibition in the statute preventing the court from approving investments made by fiduciaries without prior order of court. Robinson v. Irwin, 204 Iowa 98, 214 N. W. 696; In re Guardianship of Benson, 213 Iowa 492, 239 N. W. 79; In re Lawson's Will, 215 Iowa 752, 244 N. W. 739, 88 A. L. R. 316; Valley National Bank v. Crosby, 108 Iowa 651, 79 N. W. 383."

There is a claim made that the title to the property was defective. An examination shows that the defects have all been cured by the lapse of time and that the title is not defective.

It therefore follows that the lower court erred in not approving the purchase of the real estate and the final report of the guardian. Judgment and decree of the lower court must be, and it is hereby reversed and remanded, for an order in compliance with the provisions of this opinion.—Reversed and remanded.

Chief Justice and all Justices concur.